**SO ORDERED.**

**DONE and SIGNED July 8, 2022.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 22-30301 |
| | § | |
| Thornhill Brothers Fitness, LLC | § | Chapter 11 |
|   Debtor | § | Subchapter V |
| | § | |
| | § | |

## <u>Memorandum Ruling</u>

Debtor owns and operates a fitness club under a franchise agreement with Anytime Fitness, LLC. Before this bankruptcy case was commenced, Debtor and Anytime Fitness were defendants in a personal injury action pending in state court. The lawsuit alleged that William Flynn suffered serious injuries, including paralysis and permanent disability, resulting from his use of Debtor's defective exercise equipment. All claims against Anytime Fitness were later dismissed by the state court.

On the eve of a civil jury trial, Debtor filed this bankruptcy case. Thereafter,

the plaintiffs in the personal injury action promptly filed a motion to lift the automatic stay to permit the jury trial to proceed as scheduled. That motion was resolved by this court entering an agreed order which permitted the parties to take certain actions in the state court litigation, including stipulating to a judgment. The agreed order, however, was later set aside by this court because Anytime Fitness was entitled to, but did not receive, notice of the motion.

Before the court are two motions. First, Debtor seeks an order which 1) authorizes it to compromise the personal injury action on the terms set forth in the stipulated judgment and 2) retroactively annuls the automatic stay with respect to actions taken in the state court litigation while the stay was in place. Second, Anytime Fitness seeks an order that invalidates all actions taken in the state court litigation while the automatic stay was in place.

For the reasons that follow, the court concludes that 1) the proposed compromise is in the best interest of the estate, meets the factors set forth by the Fifth Circuit, and therefore should be approved; 2) the automatic stay should be annulled with respect to the actions taken in the state court litigation while the stay was in place; and 3) the request of Anytime Fitness to invalidate the parties' actions in violation of the automatic stay should be denied.

## Background

Pursuant to Fed. R. Bankr. P. 7052, made applicable to contested matters by virtue of Fed. R. Bankr. P. 9014, the court makes the following findings:

1. On March 16, 2022, Thornhill Brothers Fitness, LLC (the "**Debtor**")

commenced this case under subchapter V of chapter 11 of the Bankruptcy Code.

2.  On the petition date, Debtor filed a List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders (docket no. 2) that listed William and Billie Flynn (the "**Flynns**") as creditors. The claim was described as a "personal injury claim that allegedly exceeds $1 million in insurance."

3.  The following day, the Flynns filed an Emergency Motion for Relief from Automatic Stay (docket no. 15) in which they requested this court to modify the automatic stay pursuant to 11 U.S.C. § 362(d) to allow a jury trial in that case styled "*William Flynn and Billie Flynn v. Anytime Fitness, LLC, Thornhill Brothers, LLC d/b/a Anytime Fitness, and Markel Insurance Company, et al.*," case number 45828 in Division "A" of the 18th Judicial District Court, Parish of West Baton Rouge (the "**state court litigation**").

4.  The Flynns' emergency motion was filed on Thursday, March 17, 2022, seeking the entry of an order permitting the jury trial to start on Monday, March 21, 2022.

5.  Complicating these fast-moving events was the fact that the court's electronic filing system, Case Management/Electronic Case Files ("**CM/ECF**"), which is used by both court personnel and litigants, was scheduled to be offline for an upgrade beginning on the afternoon of Thursday, March 17, 2022, until the morning of Monday, March 21, 2022. This was the same morning that the

jury trial was set to commence. With the automatic stay having been triggered by Debtor's filing bankruptcy, the jury trial could not proceed without an order from this court modifying the stay.

6. To address this situation, the court held a telephone status conference on Thursday, March 17, 2022, with all known counsel (Debtor's counsel and the Flynns' counsel).

7. During that phone call—which was not held on the record because the court's recording equipment was shut down during the CM/ECF upgrade—the Flynns' counsel informed the court that Debtor's insurer had offered to tender the limits of its insurance policy ($1 million) if the Flynns would dismiss their case and cancel the jury trial. The Flynns refused that offer and were prepared to present their case to a civil jury, hoping that the jury would award damages in excess of the limits of the insurance policy.

8. The parties indicated during the status conference that attempts had been made and were apparently still being made to come to an agreement regarding an order that would allow the jury trial to proceed as scheduled. However, at that point, no agreement had been reached.

9. As a result, to accommodate the parties in this unusual circumstance, the court granted the Flynns' request for an expedited hearing (docket no. 17), setting it for Monday, March 21, 2022, at 9:00 a.m., one hour before the state court litigation was set to commence. There was no possibility of having a hearing on Friday, March 18, 2022, due to the CM/ECF system—which

includes the court's electronic recording software—remaining offline. At the time the order was entered late in the afternoon on Thursday, March 17, 2022, the CM/ECF system was already offline, which is why the order's signature block contains a handwritten signature by the judge instead of a standard electronic signature.

10. The next day, Friday, March 18, 2022, counsel for Debtor contacted the court to convey the news that an agreement had been reached between Debtor and the Flynns on an order that contained four provisions. First, the automatic stay would be lifted to allow the parties to enter into a Stipulation (docket no. 31-1), a Confession of Judgment (docket no. 31-2), and a Judgment (docket no. 31-3). Second, the automatic stay would be lifted to allow Debtor's insurer, Markel Insurance Company, to make its payments required under the Stipulation. Third, the automatic stay would be lifted to allow the movants to pursue the rights assigned to them by Debtor in the Stipulation. Fourth, regarding all other matters, the stay would remain in effect.

11. Because of the logistical issues with the CM/ECF system, the agreed order was emailed to the judge, who manually signed it. The order became effective upon the judge's signature but was not docketed by the clerk of court until the morning of Monday, March 21, 2022, (docket no. 18). An amended order (docket no. 31) was entered later in the week that contained as attachments the state court filings that were referenced in the agreed order.

12. At that point, it seemed as though the agreed order had dispensed with the

need of Debtor to continue in bankruptcy. As a result, on March 25, 2022, Debtor moved to dismiss this bankruptcy case (docket no. 27).

13. On April 1, 2022, Anytime Fitness, the franchisor in a franchise agreement with Debtor, filed a Motion for Reconsideration, Rehearing, and/or New Trial (the "**Motion for Reconsideration**") (docket no. 35). In it, Anytime Fitness asserted that it was not provided with notice of any of the events that transpired between the filing of bankruptcy petition on March 16, 2022, and the entering of the amended agreed order on March 25, 2022. Anytime Fitness also pointed out that the Stipulation, Confession of Judgment and Judgment were voidable as they were entered in violation of the automatic stay. This violation occurred because the agreed order entered by this court did not waive the fourteen (14) day stay that is imposed upon the entry of an order lifting the automatic stay, pursuant to Fed. R. Bankr. P. 4001(a)(3). Finally, Anytime Fitness argued that the relief sought and acquired by Debtor and the Flynns was essentially an end run around Fed. R. Bankr. P. 9019(a) (governing approval of compromises and settlements) and 11 U.S.C. § 365 (governing the assumption and assignment of executory contracts). Anytime Fitness asked this court to vacate both the original order (docket no. 18) and the amended order (docket no. 31) under Fed. R. Bankr. P. 9023— which incorporates Fed. R. Civ. P. 59(e)—and/or Fed. R. Bankr. P. 9024— which incorporates Fed. R. Civ. P. 60(b).

14. Anytime Fitness also opposed (docket no. 42) Debtor's motion to dismiss this

bankruptcy case without the express vacatur of the original and amended orders that were the subject of its Motion for Reconsideration.

15. After a hearing on the Motion for Reconsideration, this court concluded that Anytime Fitness was entitled to the relief requested under Fed. R. Civ. P. 59(e). Thereafter, the Motion to Dismiss was orally withdrawn in open court.

16. On May 3, 2022, the court entered an order (docket no. 56) which formalized its findings.

17. Following the entry of that order, Debtor filed an Application to Approve a Compromise under Fed. R. Bankr. P. 9019 and to Annul the Stay (the "**9019 Motion**") (docket no. 51). Conversely, Anytime Fitness filed a Motion to Void the State Court Actions (the "**Motion to Void**") that had occurred in violation of the automatic stay (docket no. 58).

18. The court held an evidentiary hearing on both the 9019 Motion and the Motion to Void.

## Jurisdiction, Venue and Core Status

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409(a). These matters constitute "core" proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (G), and (O).

## Conclusions of Law and Analysis

### A. The Proposed Compromise

The proposed settlement emanates from a Stipulation between Debtor and

the Flynns which provides:

1) MARKEL INSURANCE COMPANY, shall pay unto plaintiffs, William Bill Flynn, And Billie Flynn, ONE MILLION DOLLARS ($1,000,000.00) in full exhaustion of MARKEL INSURANCE COMPANY Policy No. HCP7000-2199-05, *plus* judicial interest [$ 94,358.39 as of 3/21/22] and costs [$48,824 as of 3/16/22], for **a total amount of $1,143,182.39**, to WILLIAM FLYNN AND BILLIE FLYNN within thirty (30) days of execution of this document.

2) In accordance with Louisiana Civil Code Article 2642, all rights of THORNHILL BROTHERS FITNESS, LLC against ANYTIME FITNESS, LLC and its insurers except Markel Insurance Company, including but not limited to rights of contribution, indemnification, or any other theory of recovery, *are hereby assigned to Plaintiffs*, WILLIAM FLYNN AND BILLIE Flynn under any theory of recovery allowed by law, except that, to the extent such recovery requires indemnification by THORNHILL BROTHERS FITNESS, LLC of ANYTIME FITNESS, LLC and its insurers, WILLIAM FLYNN AND BILLIE Flynn hereby waive any such recovery. William Flynn and Billie Flynn are not assuming obligations of Thornhill Brothers Fitness, LLC to indemnify Anytime Fitness, LLC. Anytime Fitness, LLC, shall be entitled to full credit for the money paid by Markel Insurance Company pursuant to this stipulation.

3) THORNHILL BROTHERS FITNESS, LLC, shall, immediately upon execution of this stipulation, void any and all agreements, contracts, representations, or any other such document, that has been or will be entered into with ANYTIME FITNESS, LLC and any of its insurers except Markel Insurance Company, such that any rights assigned to or gained by plaintiff as a result of this agreement will not be hindered, except that THORNHILL BROTHERS FITNESS, LLC shall be allowed to maintain its Franchise Agreement with ANYTIME FITNESS, LLC and to potentially assign the Franchise Agreement to a potential purchaser.

4) THORNHILL BROTHERS FITNESS, LLC, will remain a nominally named defendant in this lawsuit, in name only, such that any claims that Plaintiffs have or may come to have against ANYTIME FITNESS, LLC on appeal, or otherwise, shall not be interfered with or jeopardized. Anytime Fitness, LLC, shall be entitled to full credit for the money paid by Markel Insurance

Company pursuant to this stipulation.

5) Plaintiffs waive the right to pursue or collect any debt owed by THORNHILL BROTHERS FITNESS, LLC, to Plaintiffs which exceeds the ONE MILLION DOLLAR ($1,000,000.00) insurance coverage provided by MARKEL INSURANCE COMPANY Policy No. HCP7000-2199-05. Anytime Fitness, LLC, shall be entitled to full credit for the money paid by Markel Insurance Company pursuant to this stipulation.

6) Full release of MARKEL INSURANCE COMPANY for any liability under Policy No. HCP7000-2199-05.

7) However, in the event an appeal is granted as to ANYTIME FITNESS, LLC, and a trial thereafter proceeds against ANYTIME FITNESS, LLC, THORNHILL BROTHERS FITNESS, LLC agrees to be included on the jury verdict form for purposes of recovering against ANYTIME FITNESS, LLC, under any theory of liability applicable or under the terms and conditions of the "indemnity agreement" contained in the Franchise Agreement as between ANYTIME FITNESS, LLC and THORNHILL BROTHERS FITNESS, LLC. For purposes of clarity, Anytime Fitness, LLC, shall be entitled to full credit for the money paid by Markel Insurance Company pursuant to this stipulation.

8) Plaintiffs reserve their rights to pursue claims against any and all persons, entities, insurers, or defendants, namely ANYTIME FITNESS, LLC and its insurers, The Hartford and Chubb Limited/Federal Insurance Company, but excluding Markel Insurance Company. For purposes of clarity, Anytime Fitness, LLC, shall be entitled to full credit for the money paid by Markel Insurance Company pursuant to this stipulation.

9) It is the intent of the parties that this Agreement follow: *Gasquet v. Commercial Union Ins. Co., 391 So.2d 466 (La. App. 4th Cir. 1980); Futch v. Fidelity & Cas. Ins. Co., 246 La. 688, 166 So.2d 274 (La. 1964); Wirick v. Wyble, 300 So.2d 571 (La. App. 3rd Cir. 1974); Thompson v. Shay, 817 So.2d 1230 (La. App. 1st Cir. 2002); Finnie v. LeBlanc, 875 So.2d 71 (La. App. 3rd Cir. 2004)*; Sumrall v. Bickham, 887 So.2d 73 (La. App. 1st Cir. 2004); and other cases that recognize the rights of injured parties to settle claims with insureds, and underlying insurers, with the reservation of rights to pursue claims against other insurers, excluding Markel Insurance Company, such as the Non-Settling Insurers (The Hartford and

Chubb Limited/Federal Insurance Company), though not named defendants. For purposes of clarity, Anytime Fitness, LLC, shall be entitled to full credit for the money paid by Markel Insurance Company pursuant to this stipulation.

The stipulation is subject to the conditions below:

(a) Markel Insurance Company pays its policy limits, of ONE MILLION DOLLARS ($1,000,000.00), plus interest [$94,358.39 as of 3/21/22] and cost [$48,824 as of 3/21/22] with thirty (30) days;

(b) the defendant, THORNHILL BROTHERS FITNESS, LLC agree to confess Judgment in the amount of SEVEN MILLION DOLLARS ($7,000,000.00) exclusive of interest and cost;

(c) Plaintiffs agree not to collect above the Markel Insurance Company policy of ONE MILLION DOLLARS ($1,000,000.00) plus interest [$94,358.39 as of 3/21/22] and costs [$48,824 as of 3/21/22],

(d) THORNHILL BROTHERS FITNESS, LLC assigns any all rights it has against ANYTIME FITNESS, LLC to Plaintiffs for contribution, indemnification, and / or any other means of collection above the Markel Insurance Company policy, but in no event shall any such recovery against Anytime Fitness, LLC result in liability of Thornhill Brothers Fitness, LLC to Anytime Fitness, LLC.

(e) William Flynn and Billie Flynn are not assuming any obligations of Thornhill Brothers Fitness, LLC to indemnify Anytime Fitness, LLC.

(f) Execution of a Gasquet agreement in favor of Markel Insurance Company and Thornhill Brothers Fitness, LLC d/b/a Anytime Fitness.

(g) Execution of a partial satisfaction of judgment in favor of Markel Insurance Company and Thornhill Brothers Fitness, LLC d/b/a Anytime Fitness.

Stipulation, docket no. 31-1 (emphasis in original).

The settlement also includes a Confession of Judgment (docket no. 31-2) in

the amount of $7 million, plus costs and judicial interest, in favor of the Flynns and

against Debtor. Finally, the settlement includes a Judgment (docket no. 31-3) against Debtor and Markel Insurance Company, requiring Markel to pay the agreed sum of $1,143,182.39 within 30 days of the execution of the judgment.

Bankruptcy Rule 9019 authorizes the "trustee," which includes a debtor in possession in a chapter 11 case, to seek an order approving a compromise or a settlement. Specifically, the Rule provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

Compromises in bankruptcy are a "normal part of the process of reorganization, oftentimes desirable and wise methods of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 354 (5th Cir. 1997) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980)). Courts are empowered to approve a compromise under Rule 9019(a) if the trustee or debtor in possession meets its burden to show that it is "fair and equitable and in the best interest of the estate". *Jackson Brewing Co.*, 624 F.2d at 602.

When analyzing whether to approve a settlement under Rule 9019, courts in the Fifth Circuit follow the three-part test set out in *Jackson Brewing Co.*: "(1) the probability of success in the litigation, with due consideration for the uncertainty of

fact and law, (2) the complexity and likely duration of the litigation and any attended expense, inconvenience, and delay, and (3) all other factors bearing on the wisdom of the compromise." *Jackson Brewing Co.*, 624 F.2d at 609. Although the third factor operates as a "catch-all," the Fifth Circuit has specified that this factor contains two additional considerations. First, a court should consider the interests of creditors, "with proper deference to their reasonable views." *Cadle Co. v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010). Second, the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion". *Id.*

Evaluating a Rule 9019 settlement does not require a bankruptcy court to "conduct a mini-trial to determine the probable outcome of any claims waived in the settlement," but rather the court must "apprise [itself] to the relevant facts and law so that [it] can make an informed and intelligent decision." *In re Age Refining, Inc.*, 801 F.3d 530, 541 (5th Cir. 2015) (citing *In re Cajun Elec. Power Coop.*, 119 F.3d at 356). "The trustee, or debtor in possession, bears the burden of establishing that the balance of the *Jackson Brewing* factors supports a finding that the compromise is fair, equitable, and in the best interests of the estate. This burden is not a high one, and the debtor in possession need only show that [its] decision falls within the range of reasonable litigation alternatives." *In re Express Grain Terminals, LLC*, No. 21-11832-SDM, 2022 WL 1311533, at *15 (Bankr. N.D. Miss. May 2, 2022) (internal citations and quotation marks omitted).

The court will address each factor.

*1. The probability of success in the litigation*

The first factor leans heavily in favor of approval of the compromise. Prior to the commencement of this bankruptcy case, Debtor was embroiled in litigation with the Flynns. Debtor's bankruptcy counsel and the Flynn's litigation counsel represented that they spent numerous hours reviewing the pleadings filed in the state court action and the evidence related thereto, and they concluded that Debtor has a low probability of success. Many of the facts in the state court litigation are not in dispute, including the fact that William Flynn sustained an exercise-related injury on Debtor's premises. Debtor concedes that these injuries caused Mr. Flynn to spend multiple months in Louisiana hospitals and rehab facilities and to accumulate hundreds of thousands of dollars in medical bills.

According to Debtor's counsel, Debtor's back was "against the proverbial wall," as it seemed clear that it was facing an excess judgment—potentially far exceeding the $1 million of insurance coverage that Debtor held through Markel Insurance Company. Plaintiff's counsel testified that believed the case was, "in my 27 years [of practicing law], to be the second of all most severe." Hearing Tr., docket no. 80, p. 27, lines 22-23. Plaintiff's counsel also testified that he was prepared to show the jury an extensive PowerPoint presentation describing the accident and outlining the allegations against Debtor, as well as a video of Mr. Flynn attempting to walk after the accident. *See* docket 71-18 and 71-26. Plaintiff's counsel presented a physician's report which concluded that Mr. Flynn "clearly sustained a fracture as the result of the accident in question." *See* docket no. 70-10 at 7.

Considering the testimony of Plaintiff's counsel as a whole and the other evidence presented during the hearing, the court concludes that the chances of success for Debtor in the state court litigation are bleak at best.

### 2. *The complexity and likely duration of the litigation*

This factor weighs in favor of approving the compromise. If the personal injury action is permitted to proceed, it would be costly and cause significant delay. Debtor's estate does not have sufficient funds to pay the expenses that would be associated with the litigation.

If the settlement is approved, then Debtor can effectively extricate itself from the state court litigation and confirm a plan of reorganization which, if implemented, can allow it to be sold as a going concern. If the settlement is rejected and the state court litigation against Debtor results in an excess judgment, that judgment will entirely deplete the assets of the estate. The excess judgment would also severely damage the ability of Debtor to be sold as a going concern. Approval of the settlement is in the best interest of the estate.

### 3. *The interests of the creditors with proper deference to their reasonable views*

This factor is the most contested factor in the analysis as some creditors support the proposed compromise and one creditor opposes it.

The Flynns are the primary creditors in this case. Debtor listed the Flynns in its bankruptcy schedules as holding contingent, unliquidated, and disputed claims against the estate which "allegedly exceed $1 million in insurance." (Official Form 206E/F, ¶ 3.4, docket no. 21). The Flynns are parties to the compromise and support

its approval.

Anytime Fitness is a party in interest in this case as it is a counterparty to a franchise agreement with Debtor. Although Anytime Fitness is not currently owed any money by Debtor, the court will treat Anytime Fitness as a creditor. Anytime Fitness opposes the compromise. In the Fifth Circuit, when the rights of a non-settling third party are implicated by a proposed compromise, it is appropriate to consider the third party's rights in deciding whether to approve the compromise. *In re AWECO, Inc.*, 725 F.2d 293, 298 (5th Cir.1984) ("[e]ven if a settlement is fair and equitable to the parties to the settlement, approval is not appropriate if the rights of others who are not parties to the settlement will be unduly prejudiced"); *In re Zale*, 62 F.3d 746, 764 (5th Cir. 1995) ("When third parties are affected, we scrutinize carefully the fairness of the hearing afforded.") (citing *In re Masters Mates*, 957 F.2d 1020, 1031 (2nd Cir. 1992)) ("[T]hird party participation in an evidentiary fairness hearing and court approval of the settlement bar are necessary to protect the rights of third parties.").

Anytime Fitness argues that the proposed settlement unduly prejudices its interests for two reasons: 1) it impermissibly assigns rights in the franchise agreement to the Flynns, and 2) it impermissibly annuls unspecified contracts with Anytime Fitness. The court will address each contention.

### Assignment of Rights

The assignment clause is set forth in ¶ 2 of the Stipulation. That clause assigns to the Flynns "all rights" of Debtor against Anytime Fitness "under any

theory of recovery allowed by law," including "rights of contribution, indemnification, or any other theory of recovery." Stipulation ¶ 2.

Anytime Fitness argues that Debtor does not have any indemnification or contribution rights to assign. According to Anytime Fitness, the indemnification and contribution obligations are owed by Debtor to Anytime Fitness, not the other way around. Alternatively, Anytime Fitness argues that to the extent such rights exist, they are derived from the franchise agreement, which has neither been assumed as an executory contract nor assigned in a manner prescribed by § 365 of the Bankruptcy Code. Finally, Anytime Fitness argues that the franchise agreement, and any rights thereto, are unassignable pursuant to the terms of the agreement and applicable law.

The court begins its analysis of this argument by examining the terms of the assignment. To the extent assignable under any agreement or applicable law, ¶ 2 of the Stipulation provides for the assignment of "all rights" of Debtor against Anytime Fitness to the Flynns. Importantly, the Stipulation does not: 1) represent or warrant that Debtor has any rights against Anytime Fitness, 2) identify the source of any rights that Debtor may possess against Anytime Fitness, such as rights arising under applicable law or by an agreement, 3) constitute an assumption or assignment by Debtor of an executory contract, or 4) assign rights in any agreement which may be unassignable by applicable law. Instead, by its terms, ¶ 2 of the Stipulation merely provides that "all rights" of Debtor against Anytime Fitness are assigned to the Flynns "under any theory of recovery allowed by law."

In determining whether the settlement should be approved, it is not necessary for this court to determine whether Debtor has any rights against Anytime Fitness or whether such rights may be lawfully assigned to the Flynns. This court declines the invitation by Anytime Fitness to opine on the existence of rights that the bankruptcy estate is attempting to assign *without warranty or representation*.[1] If it turns out that the rights against Anytime Fitness do not exist or that they are worthless or are non-transferrable, then its interests will be untouched, and the bankruptcy estate will be shielded against any liability beyond the $1 million plus interests and costs. If, however, it turns out that the rights assigned under the Stipulation exist and are assignable, then the Flynns and Anytime Fitness will have to litigate the existence of the rights and the validity of the assignment in another forum.

Simply put, approval of the settlement will not harm the interests of Anytime Fitness as the settlement does not interfere with its ability to assert any claims or defenses with respect to the assignment. To be clear, Anytime Fitness is free to assert in another forum that all rights of Debtor are unassignable under the terms of the franchise agreement and/or applicable law.

### Annulment of Unspecified Contracts

Paragraph 3 of the Stipulation requires Debtor to "void any and all agreements, contracts, representations or any other such document" that it may have with Anytime Fitness, other than the franchise agreement. Anytime Fitness

---

[1] To obtain a declaratory judgment, a party must file a complaint to initiate an adversary proceeding. *See* Fed. R. Bankr. P. 7001(9).

argues that the requirement to "void" any contract it may have with Debtor violates the provisions of § 365 of the Bankruptcy Code which governs the rejection of executory contracts. The parties, however, have been unable to identify any contract that would be affected by this provision, much less an executory contract. As such, this is not a basis to deny approval of the settlement.

After considering the concerns of Anytime Fitness about its interests being unfairly prejudiced, the court finds that the third factor weighs in favor of approving the proposed settlement.

*4. Extent to which the settlement is the product of arm's length bargaining.*

This factor weighs in favor of approval of the compromise. At the hearing, the court heard testimony of a witness which proved that the proposed compromise is the product of arm's length bargaining between Debtor's counsel and the Flynns' litigation counsel. Although Anytime Fitness questions the arm's length nature of the bargaining and suggested that Debtor's counsel and the Flynns' counsel colluded or engaged in fraudulent behavior, this court finds that there is no evidence of such collusion or fraudulent behavior. The court acknowledges the concerns of Anytime Fitness regarding the speed at which the events in this case took place. This case has admittedly been unusual, owing to the technical difficulties at the beginning of the case, the imminent trial date, and the eventual vacatur of the agreed orders. However, neither the unusual circumstances nor the accelerated negotiating time frame is persuasive to this court that collusive behavior occurred behind the scenes.

*5. Other factors bearing on the wisdom of the compromise*

Debtor has proposed a settlement which undoubtedly is to *its own* benefit. If the settlement is approved, it will obtain a full release in exchange for the assignment of a mere potential right without warranty and a payment on its behalf. If the settlement is approved, Debtor can effectively free itself from the state court litigation and implement a reorganization plan that can allow it to be sold as a going concern. Approval of the settlement is in the best interest of the estate.

On the other hand, if the settlement is rejected and the state court litigation against Debtor results in an excess judgment, that judgment will entirely deplete the assets of the estate. The excess judgment would also severely damage the ability of Debtor to be sold as a going concern.

In sum, the *Jackson Brewing* factors weigh heavily in favor of approving the compromise and demonstrate to the court that the compromise is well within the range of reasonableness.

## B. Annulment of the Automatic Stay

Debtor and the Flynns violated the automatic stay by taking actions in the state court litigation after the commencement of this bankruptcy case. Although they may have thought that the automatic stay had been lifted before they executed the Stipulation or the Consent Judgment, the automatic stay was in effect. While it is true that this court entered an agreed order lifting the stay before the parties signed the Stipulation or the Consent Judgment, the order itself was stay by operation of law. Fed. R. Bankr. P. 4001(a)(3) provides: "An order granting a motion

for relief from an automatic stay made in accordance with Rule 4001(a)(1) *is stayed until the expiration of 14 days after the entry of the order*, unless the court orders otherwise" (emphasis added). The agreed order did not provide for a waiver of the 14-day stay. Thus, at the time Debtor and the Flynns filed their Stipulation and Consent Judgment in state court, the automatic stay was in effect. Debtor and the Flynns violated the automatic stay.

In the Fifth Circuit, it is well settled that "actions taken in violation of the automatic stay are not void, but rather they are merely voidable, because the bankruptcy court has the power to annul the automatic stay pursuant to section 362(d)." *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 850 (5th Cir. 1990), *citing Sikes v. Global Marine, Inc.,* 881 F.2d 176 (5th Cir.1989). Debtor filed a motion in this court seeking the annulment of the stay so it can cure its voidable actions. A voidable action "is invalid and of no effect *unless and until the action is made valid by subsequent judicial action annulling the automatic stay*." *In re Dillon*, 619 B.R. 357, 362 (Bankr. S.D. Miss. 2020) (emphasis added). As the Fifth Circuit has noted: "The power to annul authorizes retroactive relief even unto the date of the filing of the petition giving rise to the automatic stay. The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay." *Sikes*, 881 F.2d at 178.

11 U.S.C. § 362(d)(1) requires courts to retroactively annul the automatic stay where there exists "cause" to do so. The statute provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of

this section, such as by terminating, annulling, modifying, or conditioning such stay—

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

For the moving party to obtain an annulment of the stay, it must meet the statutory standard of "for cause." The Fifth Circuit has noted that the Bankruptcy Code does not precisely define what "for cause" means and that this lack of clarity provides "flexibility to the bankruptcy courts." *See In re Mirant Corp.*, 440 F.3d 238, 254 (5th Cir. 2006). As such, whether "cause" exists is a fact-intensive inquiry that must be determined on a case-by-case basis. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998) ("Because § 362 does not offer guidance as to what constitutes 'cause,' reviewing courts must determine whether cause existed on a case-by-case basis.").

Annulment of the stay should only be granted in exceptional circumstances. *In re Thornburg*, 277 B.R. 719, 731 (Bankr. E.D. Tex. 2002). Courts have "broad discretion" to grant an annulment of an automatic stay. *Pentecost v. Louisiana Safety Ass'n of Timbermen*, 626 B.R. 879, 886 (W.D. La. 2021). "The party moving for the retroactive lifting of the stay has the burden to make a prima facie showing of cause for relief." *In re WorldCom, Inc.*, 325 B.R. 511, 521 (Bankr. S.D.N.Y. 2005).

In evaluating whether "cause" exists to annul the stay to retroactively validate actions taken in violation of the stay, some courts within the Fifth Circuit have considered the following:

1. If the creditor had actual or constructive knowledge of the bankruptcy filing and, by extension, the automatic stay;
2. If the debtor has acted in bad faith;
3. If there was equity in the property of the estate;
4. If the property was necessary for reorganization;
5. If the grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation;
6. If failure to grant retroactive relief would cause unnecessary expense to the creditor; and
7. If the creditor has detrimentally changed its position on the basis of the action taken.

*Thornburg*, 277 B.R. at 731, n. 18.

The court will only apply the factors that are relevant to the case and will not give each factor equal weight. In this case, five factors weigh heavily in favor of annulling the stay.

Factor 2 (whether Debtor acted in bad faith) weighs in favor of annulling the stay. In this case, the court concludes that Debtor acted in good faith. Debtor honored the automatic stay by acknowledging its existence and the need to obtain court approval before taking any action in the pending personal injury litigation. Debtor relied upon an order of this court which modified the stay to permit such action but which, through oversight, failed to include a waiver of the 14-day stay of the order. The court concludes that Debtor justifiably believed that its actions were not in violation of the stay. *Pentecost,* 626 B.R. at 886 ("Courts have consistently held that retroactive annulment of the automatic stay will only be granted if the party seeking such relief 'justifiably believed their action did not violate the automatic stay.' "), citing *In re Brown*, 251 B.R. 916 (Bankr. M.D. Ga. 2000).

Factor 4 (whether the property was necessary for reorganization) weighs in

favor of annulling the stay. The properties at issue (i.e. the inchoate rights assigned to the Flynns) are not necessary for Debtor's reorganization. In fact, it may turn out that Debtor does not have any "rights" against Anytime Fitness to assign to the Flynns. In any event, to the extent that such "rights" exist, they are not necessary for reorganization.

Factor 5 (whether grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation) also weighs in favor of annulling the stay. This court frequently gives its approval to motions for relief from the automatic stay that include waivers from the stay triggered under Rule 4001(a)(3). Had the court been presented with such a request in this case, it certainly would have done so as well. There was a need for the parties to quickly lift the stay so as to not jeopardize the loss of the state court litigation start date.

Factor 6 (whether the failure to grant retroactive relief would cause unnecessary expense to the creditor) also weighs in favor of annulling the automatic stay. If this court declines to grant retroactive relief, it would cause unnecessary expense to the Flynns. In fact, the Flynns cannot be made whole if the Stipulation and Consent Judgment are declared to be void.

Factor 7 (whether the creditor has detrimentally changed its position on the basis of the action taken) also weighs heavily in favor of annulling the automatic stay. In this case, the Flynns relied on the agreed order to their detriment as they agreed to forfeit a jury trial in a case in which the lead plaintiff is more than 80 years old.

Five of the seven factors weigh in favor of granting the annulment. The remaining factors do not tip the scale in either direction.

Given the strange and unusual circumstances of this case and the court finding that Debtor has met its burden of proof, the court finds that there is cause to annul the stay. The actions taken in the state court litigation are hereby validated.

## C. Motion to Void the State Court Actions

Anytime Fitness filed a motion seeking to void all actions taken in the state court litigation after the commencement of this bankruptcy case. As the court has already found that the violations of the automatic stay in the state court litigation will be validated, the Motion to Void is denied.

## Conclusion

The court concludes that the settlement is fair and equitable and in the best interest of the estate. The settlement is reasonable in relation to the likely outcome of the litigation. The settlement properly balances the interests of all stakeholders with the likely pitfalls of litigation.

The court finds that Debtor properly exercised its reasonable business judgment to determine that the benefits of the settlement outweigh its costs after considering the probability of success in litigating the claims, the complexity and likely duration of the litigation and related expenses and inconvenience, and all other factors bearing on the wisdom of the compromise, including the interests of the creditors and non-settling parties.

For these reasons, the court hereby 1) approves the settlement with the

Flynns, 2) annuls the automatic stay and retroactively validates the actions taken by Debtor and the Flynns in state court, and 3) denies the motion to void the state court actions.

The court will enter a separate order in accordance with this ruling.

###